**Dearing E. JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 305–89.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 12, 1990.

Rehearing Overruled Sept. 12, 1990.

Donald M. Brown, Conroe, Bruce C. Cobb, Beaumont, court appointed, for appellant.

Peter C. Speers, III, Dist. Atty., Thomas D. Glenn, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

**PER CURIAM:**

Motion for rehearing on petition for discretionary review denied.

CLINTON, Judge, dissenting.

The trial of any case is fraught with traditional incidents the uninitiated may regard as "ritual and special incantation." That is because our judicial system is rooted in the Common Law of England, which in turn is a body of principles and rules of action derived from usages and customs of immemorial antiquity recognized, affirmed and enforced by its courts.

Judicial power is that which adjudicates and protects rights and interests of citizens according to law; it is the power to determine contested factual issues, to apply the law, to decide legal results of the controversy and to pronounce judgment and carry it into effect. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 644–645 (Tex. 1933); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1069 (1926). In this country and this state jurisdiction and authority to exercise judicial power of government is vested in our respective courts. Article III, Constitution of the United States; Article V, §§ 1, 3, 5, 6, 8, 16, and 19, Constitution of the State of Texas. They adjudicate.

A criminal prosecution is an action instituted in a court of proper jurisdiction for the purpose of obtaining conviction and punishment of one accused of crime. It is a proceeding conducted by a trial court through the judge presiding. Ordinarily accused must be personally present at trial. Article 33.03, V.A.C.C.P.; see *Brown v. The State,* 38 Tex. 482 (1873).

Unless waived by accused, there shall be a ritual called an arraignment, to identify accused and hear his plea; a plea of not guilty constitutes a denial of every material allegation in the charging instrument, and he is entitled to have qualified impartial jurors publicly selected in his presence to resolve those issues. Articles 26.01, 27.17, 33.01 and 33.03, V.A.C.C.P.; Article I, § 10, Bill of Rights.

Incantations mark the beginning of a trial by jury: the judge calls the case for trial and the parties announce ready for trial. Article 35.01, V.A.C.C.P. Then comes the ritual of administering a prescribed oath to prospective jurors, Article 35.01, V.A.C.C.P., and thereafter to those selected to serve, Article 35.22, V.A.C.C.P. Once a jury is empaneled our law mandates yet another ritual, i.e., joining the issue. Article 36.01(a)1 and 2; see *Peltier v.*

---

1. The issue of Tex.R.App.P. 81(b)(1) was not raised here or on motion for rehearing. Therefore, we do not address the issue.

*State,* 626 S.W.2d 30 (Tex.Cr.App.1981), and cases cited therein.[1]

The grandest ritual then gets under way with all its adversarial trappings of expressed expectations, sequestered witnesses, partisan testimony, vociferous objections, disputed rulings, contested instructions, rote reading aloud the court's charge to the jury, flights of oratory, jury deliberations and return of verdict. Article 36.01, et seq. The sole function of this whole ritual is to enable the trial court to ascertain facts germane to the issues in the case, primarily through its charge to the jury and the verdict of the jury in response thereto. Articles 36.13, et seq., V.A.C.C.P. The verdict is its decision of the issue submitted. Article 37.01, V.A.C.C.P. To that end the jury may communicate in writing with the court and, after using due diligence to secure the presence of defendant and counsel, the court shall answer the jury in writing read in open court unless expressly waived by defendant, Article 36.-27, V.A.C.C.P.; should the jury disagree as to certain testimony and apply to the court, they may have it read to them from notes of the court reporter or the particular witness may be recalled to repeat it, Article 36.28, V.A.C.C.P.; if the jury cannot agree on its verdict, it may be discharged by consent or by the court in its discretion, Article 36.31, V.A.C.C.P., and the cause may again be tried, Article 36.33, V.A.C.C.P.

When the jury has agreed, it is brought into court and in the presence of defendant the verdict is read aloud; if in proper form and no juror dissents and neither party requests a poll, the verdict will be entered upon the minutes of the court. Article 37.04, V.A.C.C.P. But should the verdict be informal, the court shall call that to its attention and with its consent and under direction of the court the verdict may be reduced to proper form; should the jury refuse to have its verdict altered, the court shall again retire the jury for further deliberations unless it manifestly appears the verdict is intended as an acquittal, in which event judgment shall be rendered discharging the defendant. Article 37.10, V.A.C.C.P.

Where the issue of punishment is referred to the jury, its verdict is not complete until the jury renders a verdict on guilt and assesses punishment. Article 37.-07, § 3(c), V.A.C.C.P. So also a finding of guilt by the court in a bench trial without an assessment of punishment is not a conviction. See, e.g., *Faurie v. State,* 528 S.W.2d 263, 265 (Tex.Cr.App.1975); see also *Woods v. State,* 532 S.W.2d 608, at 609, n. 1 (Tex.Cr.App.1976) (assessment of punishment part of judgment).[2]

Having thus judicially ascertained the facts and the punishment to be assessed, only the court may declare the legal consequences of those matters. That is, the

---

**1.** As the Court explained in *Essary v. State,* 53 Tex.Cr.R. 596, 111 S.W. 927 (1908), *viz:*

> "The indictment is the basis for the prosecution. Among other things, its office is to inform the appellant of the charge laid against him, and one of the purposes of the requirement that it shall be read to the jury at the beginning of the prosecution is to inform them in precise terms of the particular charge laid against the defendant on trial. *His plea thereto makes the issue.* While it may be thought that this ground of objection is in its nature quite technical, it is, nevertheless, the right of every defendant to have the charge read against him and to have his plea entered therein.... [U]nder the rule obtaining to this state for all these years the failure to observe this mandatory provision regulating the conduct of trials must be held, as we do now hold it to be, violative of his rights and hurtful to his interest."

*Id.,* 111 S.W. at 930–931 (emphasis here and throughout is mine unless otherwise indicated).

**2.** Of course, both *Faurie v. State* and *Woods v. State,* supra, were decided prior to the 1981 amendments which removed the ten day period following adjudication of guilt and assessment of punishment to allow defendant to move for new trial or in arrest of judgment before sentence could be pronounced. The Court reasoned that a defendant could not reach an intelligent decision to make such motions until "he knows the punishment that he faces." *Faurie,* at 265; *Woods,* at 611–612. Those 1981 amendments render the problem moot. They make clear that a "judgment" includes both adjudication of guilt and assessment of punishment. Article 42.01 § 1, item 8, V.A.C.C.P., in effect when the instant case was tried.

court renders its judgment.[3] Our law has always required the judgment rendered by the trial court be entered of record. Article 42.01, V.A.C.C.P., and its predecessors. "Entered of record" means the judgment actually rendered is "entered in the minutes of the court." *Moore v. State*, 156 Tex.Cr.R. 615, 245 S.W.2d 491 (1952).[4] If the judgment appearing in the minutes fails to correctly or fully recite what the court judicially determined, upon a hearing convened for that purpose the court has the power to amend or modify the entry of record to faithfully reflect the judgment actually rendered. See former article 42.-06, now Tex.R.App.Pro. Rule 36. See, e.g., *Richie v. State*, 542 S.W.2d 422, 424 (Tex. Cr.App.1976) (instrument of record omitting defendant adjudged to be guilty of the offense as charged in indictment does not meet requisites of judgment under former article 42.01, but may be corrected if in fact such was judgment rendered); *Shaw v. State*, 539 S.W.2d 887, at 890 (Tex.Cr.App. 1976) (outlining procedure for hearing to correct defective judgment); *Savant v. State*, 535 S.W.2d 190, at 192 (Tex.Cr.App. 1976) (judgment defective for want of items 9 and 10 of former article 42.01 may be corrected if shown to be in judgment as rendered); *Ex parte Hannen*, 155 Tex. Cr.R. 10, 228 S.W.2d 864, 866 (1950), vacated 155 Tex.Cr.R. 10, 230 S.W.2d 236, at 237 (1950) (hearing revealed amended minutes reflected "judgment as entered correctly showed the punishment actually assessed by court").

Manifestly, then, only a court is empowered to adjudicate and that must be done in

**3.** To render judgment is "[t]o pronounce, state, declare, or announce the judgment of the court in a given case or on a given state of facts; [it is] not synonymous with 'entering,' 'docketing,' or 'recording' the judgment." Black's Law Dictionary (Rev. 4th Ed.). As the Supreme Court delineated the rules in *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040 (1912):

"The judgment of a court is what the court pronounces. Its rendition is the *judicial* act by which the court settles and declares the decision of the law upon the matter at issue. Its entry is a ministerial act by which an enduring evidence of the judicial act is afforded."

*Id.*, 151 S.W. at 1041. Accord: *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289, at 291 (1953). Common law and the civil rule contemplate that judgment will be pronounced to the parties in open court; see cases annotated under Tex.Civ. R.Pro. 300, n. 2. Due process considerations would seem to require presence of defendant in all criminal cases; but see *Ex parte Gibson*, 137 Tex.Cr.R. 72, 128 S.W.2d 396 (1939) (only in bench trial must defendant be present when judge declares judgment of the court).

**4.** Mr. Freeman, a recognized and quoted authority on this subject, explained respective functions of rendering and entering judgment, *viz*:

"... Rendition and entry are separate acts and different in their nature. The rendition of a judgment is a *judicial* act; its entry upon the record is merely ministerial. A judgment is not what is entered, but what is ordered and considered.... In the very nature of things, the [judicial] act must be perfect before its history can be so; and the imperfection or neglect of its history fails to modify or obliterate the act. That which the court performs judicially or orders to be performed is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity."

1 Freeman on Judgments (5th Ed.) § 46, at 75–76; Freeman on Judgments (3rd Ed.) § 2, at 2 and § 38, at 26. See also 1 Black, Judgments § 21: "[A] judgment is as final when pronounced by the court as when entered and recorded by the clerk."

Article 37.12 provides that on each verdict "the proper judgment shall be entered immediately." That admonition may be traced back to former article 720, C.C.P. 1879. Early on, however, a judgment of conviction rendered was not to be entered until time for motions for new trial and in arrest of judgment had expired; thereafter the judgment was entered and sentence pronounced in presence of defendant, unless he gave notice of appeal in which event pronouncement of sentence was suspended pending decision of the Supreme Court. O.C. articles 629, 682 and 683. Any such hiatus caused problems in entering a proper judgment sufficient to predicate an appeal. Finally in *Mayfield v. The State*, 40 Tex. 289 (1881), the Supreme Court enumerated requisites which the Legislature soon adopted as article 791, C.C.P. 1879. It provided in pertinent part:

"A final judgment is the *declaration of the court* entered of record, showing—
1. * * * *
8. The verdict,
9. In the case of a conviction that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury ...,
10. That the defendant be punished as it has been determined by the jury...."

A purported judgment *sans*, e.g., item 9, is fatally defective. *Pennington v. The State*, 11 Tex. App. 281, 282 (1881).

its judgment rendered. Thus contrary to all authority is the notion advanced by the majority that "a defendant has been adjudged guilty when the verdict convicting him has been received and accepted by the trial judge." Opinion, at 34. A jury verdict finding guilt is not a judicial judgment pronouncing guilt. Again, only a court is vested with judicial power in a criminal case to consider that an accused is adjudged to be guilty of the offense found by the jury, or the court itself.

In the instant cause neither what the judge pronounced for the court, quoted at page 34 of the majority opinion, nor what was entered of record thereon, which the parties agree omitted an adjudication of guilt, is a "proper judgment." Accordingly, the trial court was without authority to sentence appellant, so in these circumstances he is wrongly confined.

The judgment of the court of appeals should be confirmed, Because it is not, I respectfully dissent to yet another erosion of fundamental principle in our own jurisprudence in favor of mere expediency.